[820 NYS2d 133]

In the Matter of MICHAEL I. KROLL, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 22, 2006

## APPEARANCES OF COUNSEL

*Rita E. Adler*, Hauppauge (*Diane M. Saccone* of counsel), for petitioner.

*Chris G. McDonough*, Melville, for respondent.

## OPINION OF THE COURT

Per Curiam.

The petitioner served the respondent with a petition dated June 15, 2005, containing two charges of professional misconduct. The respondent served an answer and, after a preliminary conference on September 28, 2005, and a hearing on February 1, 2006, at which the respondent appeared with counsel and testified on his own behalf, the Special Referee sustained both charges. The petitioner now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent's counsel has submitted an affirmation in support of the petitioner's motion to confirm the Special Referee's report and to request that the matter be referred back to the petitioner with instructions to issue a private letter of admonition.

Charge One alleges that the respondent engaged in conduct violating Code of Professional Responsibility DR 2-106 (b) (22 NYCRR 1200.11 [b]) by charging 75 identified clients an excessive fee.

The United States Patent and Trademark Office (hereinafter USPTO) received a complaint from the respondent's client, Lynn Svevad, who alleged, inter alia, that she was charged an excessive fee for the preparation of an international patent application (hereinafter the application). USPTO referred the matter to the Office of Enrollment and Discipline (hereinafter OED), which commenced an investigation and so notified the respondent by letter dated November 31, 2000.

OED determined that based upon a table published by the American Intellectual Property Law Association, which tabulates information it collects from patent practitioners regarding fees charged for various services, in 1999 the average fee charged in the New York City area for preparation of the application was $700, and that the respondent charged and collected from his client Svevad $11,500 for the same service. In the course of its investigation, OED identified 75 other clients who were charged similar fees by the respondent for the same work.

OED and the respondent entered into a settlement before a hearing. A final order of the USPTO dated February 24, 2004, suspended the respondent from practice before the USPTO for three years, but stayed the suspension based upon his compliance with certain stipulations including his notifying the 75 identified clients that they were overcharged and that they would receive a refund of one-half of the attorney's fees collected.

Charge Two alleges that the respondent violated Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) by engaging in conduct prejudicial to the administration of justice.

Rule 90.4 of the rules set forth by the Patent Cooperation Treaty governing international patent applications requires the patent applicant to sign a power of attorney form which provides authorization for the patent attorney to act on the applicant's behalf with respect to his or her application. No option is provided under the rules for the attorney of the patent applicant to sign the power of attorney form instead of the client. Upon her receipt of her file from the respondent, Lynn Svevad found that it contained a power of attorney form signed with her name that was not her handwriting.

The respondent admitted that he signed Svevad's name to the power of attorney, and that he had signed the names of other clients to the same form in the past.

In the final order dated February 24, 2004, the respondent agreed to obtain client signatures on all documents as required, and that within six months of entry of the stayed order of suspension, he agreed to rectify any defective client signatures on any documents previously submitted regarding domestic and international patent applications.

Based upon the respondent's admissions and the uncontroverted evidence, we find that the Special Referee properly sustained both charges. Accordingly, the petitioner's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent's counsel emphasizes that the respondent has and continues to suffer personally, professionally, and financially from the USPTO final order and any further punishment would be repetitive and cumulative. He submits that the fee schedule prepared and relied upon by the USPTO was not the most accurate or representative because it was

based upon a poll compiled solely of four percent of all the members of the USPTO or registered patent attorneys. Nevertheless, from the date of the settlement, the respondent has and continues to adhere to the fee schedule. Also, one month before the signing of the proposed settlement agreement, the Patent and Trademark Office waived the requirement of signing the power of attorney form on foreign patent applications. Additionally, only one of the 75 clients who are the subject of the USPTO proceeding actually made a complaint about the respondent's fee and no additional complaints have been filed against him.

The respondent has submitted five letters from attorneys who have known him for as much as 30 years and attest to his good character, honesty, diligence, and professionalism. Further, in his report, the Special Referee stated the following:

"Respondent made a credible witness on his own behalf and cooperated fully with the United States Patent and Trademark Office and the Grievance Committee on this matter. He presented himself as a dedicated attorney for his clients with vast experience in the patent field of law. His testimony was forthright and his attitude very respectful to those involved. I find that he has complied with the provisions of the USPTO order and is still engaged in practice before that tribunal."

The proceedings in this matter have cost respondent over $115,000 in fees and the loss of clients due to the publicity that accompanied the hearings before the USPTO. He expressed great remorse over this matter and assured the undersigned that he will continue to honor his obligations under the order.

The petitioner advises that the respondent has been the subject of the following prior disciplinary matters. On May 14, 1999, the petitioner issued a letter of caution to ensure that if credit cards were accepted for payment of fees, there must be proper authorization from the client before posting any charges. On June 27, 2002, it issued a letter of caution advising the respondent to hereafter devote proper attention to client matters and to communicate in an adequate manner.

Under the totality of circumstances, the respondent is publicly censured for his professional misconduct.

PRUDENTI, P.J., FLORIO, MILLER, SCHMIDT and GOLDSTEIN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent is publicly censured for his professional misconduct.